UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| DOUGLAS BRUCE, : | |
| : | |
| Plaintiff, : | Case No. 3:21-cv-80 |
| : | |
| v. : | Judge Thomas M. Rose |
| : | |
| CITY OF MIAMISBURG, OHIO, *et al.*, : | |
| : | |
| Defendants. : | |

**ENTRY AND ORDER GRANTING DEFENDANT CITY OF MIAMISBURG'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 48)**

Presently before the Court is Defendant City of Miamisburg's Motion for Summary Judgment ("Motion"). The City of Miamisburg ("Miamisburg") seeks summary judgment on Plaintiff Douglas Bruce's ("Bruce") claims of deprivation of property, violation of due process, and violation of the Eighth and Fourteenth Amendments related to the fining and demolition of his properties at 609 and 621 Cherry Hill Drive in Miamisburg, Ohio.

The Court **GRANTS** Defendant's Motion for Summary Judgment and terminates the case.

**I.     BACKGROUND**

Bruce purchased the properties at 609 and 621 Cherry Hill Drive (the "properties") at a public auction in 2013 for approximately $153,000. (Doc. No. 47 at PageID 352.) Bruce has been a property owner for approximately 46 years and owns 50 properties across the county. (*Id*. at PageID 353-54, 382-83, 425.) The properties at issue were initially placed in the name of Helen Collins ("Collins"). (Doc. No. 47-20.) Collins' sole role was to forward notices to Bruce. (Doc. No. 47 at PageID 465.) In June 2016, at Bruce's request, Collins signed a quitclaim deed turning the property over to Bruce. (Doc. No. 47-19.)

1

During the several years he owned the properties, Bruce did not hire a property manager or contract with any companies to maintain the properties. (Doc. No. 47 at PageID 354-57.) Neither Bruce or Collins stepped foot on the properties during their ownership and no tenant ever rented a unit at the properties. (*Id*. at PageID 352-53, 359, 383-85.) Consequently, over the course of Bruce and Collins' ownership, the properties were cited multiple times for failing to mow the grass or secure trash and debris on the properties. (Doc. No. 48-1 at PageID 856-882, 905-912.) The properties were ultimately declared a public nuisance and unfit for human occupation. (*Id*. at PageID 883-893, 896-904, 913-951.) Along with these notices, Miamisburg issued a number of invoices for maintenance on the properties. (Doc. No. 48-1 at PageID 953-71.) Between 2013 and 2017, Miamisburg issued the following notices:

- May 2, 2013, Violation Warning Notice for lack of mowing at the Properties (*Id*. at PageID 856-59, 864-66);

- June 20, 2013, Violation Notice for lack of mowing at the Properties (*Id*. at PageID 860-63);

- October 30, 2013, Violation Warning Notice for trash and debris surrounding the property, including the dumpster and shed at 621 Cherry Hill Drive (*Id*. at PageID 867-74);

- May 9, 2014, Violation Notice for lack of mowing at the Properties (*Id*. at PageID 875-82);

- March 30, 2015, Violation Notice declaring the Properties public nuisances (*Id*. at PageID 883-893, 896-904);

- October 22, 2015, Violation Notice for improperly secured large trash collection facilities at the Properties (*Id*. at PageID 905-12);

- December 6, 2016, Violation Notice declaring the Properties public nuisances (*Id.* at PageID 913-47);

- April 25, 2017, Violation Notice for lack of mowing at 609 Cherry Hill Drive (*Id.* at PageID 948-51);

- September 1, 2017, notifying Plaintiff that 609 Cherry Hill Drive is unsound for human occupancy and that a Notice of Demolition will be posted on the structure (Doc. No. 47-5 and 47-8); and

- September 12, 2017, notifying Plaintiff that the Properties are unsound for human occupancy and that Notices of Demolition will be posted on the structures (Doc. No. 47-6 and 47-7; Doc. No. 48-1 at PageID 980-87).

The notices and invoices were sent to a variety of different addresses. Several notices were sent to an address listed by Collins on the 2013 quitclaim, 632 Lakewood Circle, Colorado Springs, CO 80910. (Doc. No. 47-20; Doc. No. 48-1 at PageID 856-93, 896-951, 953-71.) Three of the notices were returned to Miamisburg labeled "RETURN TO SENDER," while others were signed for by Collins. (Doc. No. 48-1 at PageID 953-59, 960-65, 966-71, 980-87.) Miamisburg also mailed two Final Violation Notices, informing Bruce that the properties had been declared a nuisance and were subject to demolition, to P.O. Box 26018, Colorado Springs, Colorado 80936. (Doc. No. 47 at PageID 339-42; Doc. Nos. 47-5, 47-8, 47-16.) Bruce has maintained that P.O. box for 36 years and he listed it on the 2016 quitclaim deed. (Doc. No. 47 at PageID 339-42; Doc. No. 47-19.) Miamisburg also mailed the two Final Notices to Bruce at the Colorado State Penitentiary[1] in Canon City, Colorado. (Doc. No. 47-6, 47-7.) Additionally, Miamisburg posted the Final Notices on the front doors of both properties. (Doc. No. 47-11, 47-13.) Having received no

---

[1] Bruce was incarcerated for a period of time in either 2015 or 2016. (Doc. No. 47 at PageID 349, 364-65.)

3

response,[2] Miamisburg published notices of demolition in relation to the properties in five Miami Valley newspapers from September 21 to September 28, 2017 and April 19 to April 26, 2018. (Doc. No. 48-1 at PageID 849-54.) Miamisburg ultimately demolished the properties and mailed invoices for the demolition costs to Bruce's P.O. Box on July 20, 2018. (Doc. No. 47-10.)

Bruce filed his Complaint on March 5, 2021. (Doc. No. 1.) Bruce alleges claims of deprivation of property under the Fifth and Fourteenth Amendments, violation of Procedural Due process under the Fifth and Fourteenth Amendments, and violation of the Eigth and Fourteenth Amendments.[3] (Doc. No. 1 at PageID 5-9.) All of Bruce's claims are brought pursuant to 42 U.S.C. § 1983. (*Id.*) Miamisburg filed the present Motion on November 1, 2022 (Doc. No. 48), Bruce filed his opposition on December 13, 2022 (Doc. No. 52), and Miamisburg filed its reply on January 5, 2023 (Doc. No. 54). This matter is fully briefed and ripe for review.

## II.  LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Alternatively, summary judgment is denied "[i]f there are 'any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

---

[2] Bruce also maintained an email address at Taxcutter@msn.com, which Miamisburg used in 2013 and 2015 to communicate with Bruce about the condition of the properties. (Doc. No. 47 at PageID 507; Doc. No. 48-1 at PageID 973, 975, 977-78.)
[3] A claim for violation of Substantive Due Process was dismissed on November 3, 2021. (Doc. No. 28.)

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Anderson*, 477 U.S. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid

summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is "whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

### III. ANALYSIS

Miamisburg makes four arguments in favor of summary judgment in its Motion. First, Miamisburg argues that the statute of limitations has expired because Bruce should have been on notice of the demolition that occured nearly three years prior to the initiation of this action. (Doc. No. 48 at PageID 830-33.) Second, Miamisburg argues that a Fifth Amendment taking did not occur because the city was abating a public nuisance. (*Id*. at PageID 833-36.) Third, Miamisburg argues that it provided Bruce due process because it provided notice and the opportunity for a hearing. (*Id*. at PageID 836-40.) Finally, Miamisburg argues the fines and fees assessed to Bruce were not excessive and do not fall within the meaning of the Eight Amendment. (*Id*. at PageID 840-42.) As the statute of limitations is dispositive of the entire action, the Court finds it unnecessary to rule on Miamisburg's remaining arguments.

#### A. Statute of Limitations

"Section 1983 does not provide a statute of limitations, so we must borrow one from the most analogous state cause of action." *3799 Mill Run Partners, LLC v. City of Hilliard, Ohio*, 839 F. App'x 948, 950 (6th Cir. 2020). Consequently, the Supreme Court has explained that the statute of limitations for a Section 1983 action is borrowed from the limitations period for personal injury actions provided by the state in which the action arises. *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-380, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). The Supreme Court later clarified that where a state has multiple statutes of limitations for different

categories of personal injury, the residual personal injury statute of limitations applies. *Owens v. Okure*, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The Sixth Circuit has held that the limitations period for § 1983 actions arising in Ohio is the two-year period found in Ohio Revised Code § 2305.10. *Browning v. Pendleton*, 869 F.2d 989, 991-92 (6th Cir. 1989). The parties agree that the two-year statute of limitations applies in this case.

The inquiry then becomes when the statute of limitations began to run on Bruce's claims. The Sixth Circuit has repeatedly held, "'[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). The test to determine whether a plaintiff has reason to know of an injury "is an objective one, and the Court determines 'what event should have alerted the typical lay person to protect his or her rights.'" *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

Miamisburg argues that the relevant inquiry is whether the notices it sent to Bruce were "reasonably calculated" to apprise Bruce of the pending demolitions. (Doc. No. 48 at PageID 832-33.) Miamisburg also argues that latest the action could have accrued would have been July 20, 2018, when it sent Bruce the invoices for the demolitions of the properties. (*Id*. at PageID 833.) In opposition, Bruce argues the statute of limitations had not run because he filed this action shortly after learning the buildings had been demolished. (Doc. No. 52 at PageID 1005.) Bruce argues that the notices sent by Miamisburg were insufficient because he never received them. (*Id*. at PageID 1006.) Moreover, Bruce argues that posting notices on the properties themselves was inadequate because he never visited the buildings. (*Id*.) Finally, Bruce argues that posting notices

7

in Miami Valley newspapers was inadequate because he lives 800 miles away and did not have the opportunity to see the notices. (*Id*.)

*Jacks v. City of Youngstown* offers a useful comparator to the current controversy. No. 4:19-CV-2689, 2021 U.S. Dist. LEXIS 143358, 2021 WL 3288572 (N.D. Ohio Aug. 2, 2021). In *Jacks*, the plaintiff's property was demolished in January 2016 and the parties agreed that he was aware that property had been demolished by November 2017. *Id*. at 7. The plaintiff then filed his complaint in November 2019. *Id*. In evaluating whether the statute of limitations had run on the plaintiff's claim, the court found "[i]t is not reasonable for [the plaintiff], a real estate professional with 45 years of experience, to fail to visit his property or send an agent to visit his property for almost two years." *Id*.

Bruce filed his complaint on March 5, 2021, meaning his claim is barred unless he did not know or did not have reason to know of his injury before March 5, 2019. Similar to the plaintiff in *Jacks*, Bruce has 46 years of experience in property ownership and owns 50 properties across the county. (Doc. No. 47 at PageID 353-54, 382-83, 425.) The Final Violation Notices were posted on the properties by at least May 30, 2018. (Doc. No. 47-11; Doc. No. 47-13.) The properties themselves were demolished at some point prior to July 20, 2018, when Miamisburg sent the invoices for the demolitions (Doc. No. 47-10), because Miamisburg would send those invoices to Bruce after they had received them from the contractor who did the work. (Doc. No. 45 at PageID 288-89, 293-99.)

For an individual with 46 years of experience in property ownership and who currently owns 50 properties across the country, it is not reasonable for Bruce to have gone at least eight months without realizing two of his building were no longer in existence. Indeed, a call asking virtually anyone to drive by the properties would have confirmed this. Moreover, Bruce states that

8

he filed this action shortly after learning of the properties' demolition, which means nearly three years elapsed between the demolition of the properties and when Bruce realized they had been demolished.  Bruce also reasonably should have discovered the threat of demolition upon his properties even sooner by having an agent simply visit the properties, at which point they would have seen the Final Violation Notices posted on the front doors.

The Court is not inclined to accept Bruce's argument that he never visited the property as a worthwhile rejoinder to why he was unaware the properties had been demolished.  Indeed, Bruce's argument that he was 800 miles away is equally unavailing.  If the Court followed Bruce's suggestions, any far-off and difficult to locate landlord could let their property fall into complete ruin and then sue the city that demolished the blight for a significant sum by simply ignoring their property entirely.  This would leave local governments powerless to protect the health and safety of its communities from derelict and dangerous structures.  The Court is not willing to endorse such a complete abdication of responsibility by property owners.

A reasonably diligent person in Bruce's position should certainly have learned that their property had been demolished in the eight or more months between the demolition of the property and the last day Bruce could have discovered his injury under the statute of limitations.  The Court finds that Bruce's Complaint was filed outside the statute of limitations.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant City of Miamisburg's Motion for Summary Judgment (Doc. No. 48).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, January 13, 2023.

    s/Thomas M. Rose

    _____
    THOMAS M. ROSE
    UNITED STATES DISTRICT JUDGE